1310 ■ ■

OKLAHOMA ASSOCIATION OF MUNIC-
IPAL ATTORNEYS, Governing Bodies
of the Cities of Choctaw, Elk City, Ed-
mond, Drumright, Oilton, Hobart, Pur-
cell, Alva, Stillwater, Wynnewood, Chic-
kasha, Blanchard, Marlow, Muskogee,
Cushing Guthrie, Frederick Grandfield,
Tipton, McAlester, Tonkawa, Duncan,
Crescent, Oklahoma City, Yale, Tulsa,
Boise City, Governing Bodies of the
Towns of Soper, Mountain Park, Roose-
velt, Cooperton, Rocky, Lone Wolf, Sen-
tinel, Tuttle, Rush Springs, Bixby,
Boards of County Commissioners of Tul-
sa County, Woods County, Governing
Bodies of Oklahoma Public Trusts, the
Chickasha Municipal Authority, the Tut-
tle Gas Authority, School Boards of In-
dependent School District Number 8,
Comanche County, Sentinel, Rocky,
Mountain Park, Lone Wolf, Rush
Springs, Tuttle, Chickasha, Independent
School District Number One of Woods
County, Attorneys D. Warren Crisjohn,
Roy E. Grantham, Waldo Bales, Stan
Manske, Robert Jernigan, Virgil Tipton,
Robert Tips, Merle G. Smith, Howard M.
McBee, Loyd L. Benson, John H. McBee,
John P. Kent, Johnny M. Perry, Owen
Vaughn, George D. Allen, Steve Stack,
Robert L. Huckaby, Richard B. McClain,
Roger L. McMillian, Tom H. Morford,
Donald L. Benson, William E. Gruber,
Thomas G. Smith, C. E. Wade, Jr., Doyle
Watson, John C. Muntz, Mary Ann
Karns, Donald Royse, T. N. Pool, Harry
H. Goldman, Walter M. Powell, Harold
Logson, James M. Sandlin, Dick Pear-
man, Donald R. Hackler, S. M. Fallis Jr.,
and Andrew B. Allen, Petitioners,

v.

STATE of Oklahoma and Larry
Derryberry as Attorney General
thereof, Respondents,

Oklahoma Chapter of the Society of
Professional Journalism, Sigma
Delta Chi, Intervenors.

No. 51795.

Supreme Court of Oklahoma.

April 25, 1978.

Lynn C. Rogers, Asst. Dist. Atty., Oklahoma Ass'n of Municipal Attys., Norman, for petitioners.

Larry Derryberry, Atty. Gen. of Oklahoma, Gerald E. Weis, Asst. Atty. Gen., Oklahoma City, for respondents.

Robert G. Grove, Oklahoma City, for intervenors.

IRWIN, Justice.

Pursuant to a proper request, Larry Derryberry, Attorney General of the State of Oklahoma (respondent) issued an opinion (Opinion No. 77–222) wherein he concluded that under our new "Open Meeting Act" (25 O.S.Supp.1977, § 301 et seq.) "a public body[1] may not meet in executive session for the purpose of privately conferring with the lawyers representing the body." The force and effect of such opinion is that a public body, coming within the purview of our Open Meeting Act, may not meet in executive session with its attorney for the purpose of privately discussing pending or impending litigation.

---

1. 25 O.S.Supp.1977, § 304(1), defines "public body" for the purposes of the Act as:

"* * * the governing bodies of all municipalities located within the state of Oklahoma, boards of county commissioners of the counties in the State of Oklahoma, boards of public and higher education in the State of Oklahoma and all boards, bureaus, commissions, agencies, trusteeships, authorities, councils, committees, public trusts, task forces or study groups in the State of Oklahoma supported in whole or in part by public funds, or administering public property, and shall include all committees or subcommittees of any public body. It shall not mean the state judiciary or the State Legislature or administrative staffs of public bodies, including, but not limited to, faculty meetings of higher education, when said staffs are not meeting with the public body."

Respondent specifically overruled a previous opinion (Opinion No. 75–311, dated January 9, 1976) wherein he concluded that:

"A governing body as defined in 25 O.S.1971, § 201 may meet in executive session to privately confer with the lawyer representing said governing body concerning litigation, pending or impending, without violating the provisions of section 201." [2]

■ Petitioners, Oklahoma Association of Municipal Attorneys, various municipal and county entities, towns, public agencies, public trusts, and attorneys request this court to assume original jurisdiction and issue a writ granting relief which would have the effect of vacating or setting aside Opinion No. 77–222.

On considering whether this Court should assume original jurisdiction we find that the issues presented concern not only the public entities, governing boards, etc., all of which are specifically named as petitioner, but a determination of those issues will affect all public bodies, governing boards, etc., that fall within the purview of our Open Meeting Laws. Also, we notice that under 25 O.S.1977 Supp. § 313, any action taken in violation of the act shall be invalid, and sec. 314 imposes criminal sanctions for a willful violation. The issues presented are of broad public concern and we assume original jurisdiction. *State ex rel. Oklahoma Capitol Improvement Authority v. Cowen Construction Co.*, Okl., 518 P.2d 1264 (1974); *State ex rel. Oklahoma Capitol Improvement Authority v. Nashert & Sons, Inc.*, Okl., 518 P.2d 1267 (1974); and *Wiseman v. Boren*, Okl., 545 P.2d 753 (1976).

In Opinion No. 77–222, now under consideration respondent first pointed out that his first opinion (75–311) was based primarily on *Laman v. McCord*, 245 Ark. 401, 432 S.W.2d 753 (1968), where the Supreme Court of Arkansas held that its open meetings statute which contained language that all meetings should be open "except as otherwise specifically provided by law" did not countenance a closed meeting for consultation between a city council and its attorney. *Laman* recognized the attorney-client privilege that had been statutorily codified in Arkansas but in light of the statutory language providing for exception only when "specifically" provided, the Court refused to recognize the attorney-client relation as an exception to the Arkansas open meeting law. Further, the Court said that to allow the general attorney-client privilege as provided by statute to apply to the consultation of a city council with its attorney in private would amount to a striking of the word "specifically" from the public meeting law.

25 O.S.Supp.1977, § 303, in pertinent part provides:

"All meetings of public bodies, as defined hereinafter, shall be held at specified times and places which are convenient to the public, *except as hereinafter specifically provided* . . ." (emphasis ours)

And, sec. 307, in pertinent part provided:

"No public body shall hold executive sessions unless otherwise specifically provided for herein." [3]

---

**2.** 25 O.S.1971, § 201, which was repealed in 1977, provided in pertinent part that "*Executive sessions will be permitted only for the purpose of* discussing the employment, hiring, appointment, promotion, demotion, disciplining or resignation of any public officer or employee; provided, however, that any vote or action thereon must be taken in public meeting with the vote of each member publicly cast and recorded." (emphasis ours)

**3.** 25 O.S.Supp.1977, § 307, provides that:

＊　＊　＊　＊　＊　＊

Executive sessions of public bodies will be permitted only for the purpose of discussing the employment, hiring, appointment, promo-

tion, demotion disciplining or resignation of any individual salaried public officer or employee; or by district boards of education for the purpose of hearing evidence and discussing the expulsion or suspension of a student when requested by the student involved or his parent, attorney or legal guardian and for the purpose of discussing negotiations concerning employees and representatives of employee groups. Provided, however, that any vote or action thereon must be taken in public meeting with the vote of each member publicly cast and recorded.

No executive session by a public body shall occur except on a vote by a majority of a quorum of the members present.

Respondent stated that none of the 1977 provisions permit an executive session of a public body for the purpose of privately conferring with its attorney. The respondent took the position that by reason of the language "except as hereinafter specifically provided" and "unless specifically provided for herein," and failure to enumerate executive sessions for discussion of pending or impending litigation as one of the "specifically provided for exceptions," the Legislature evinced the intent that executive sessions of public bodies may be held only for the purpose specifically enumerated.

It is evident respondent found a material legal distinction between the language "Executive sessions will be permitted only for * * * " in the 1971 law which was repealed in 1977, and the 1977 enactment which contained the language "except as hereinafter specifically provided" and "unless otherwise specifically provided for herein".

Petitioners assert that if our open meeting laws are construed so as to prohibit public bodies from privately discussing pending or impending litigation, they constitute a statutory impediment to the otherwise usual relationship between an attorney and his client thus rendering it substantially more difficult for them as public bodies to successfully maintain or defend civil actions on behalf of the public interest. Petitioners maintain that public bodies should not be placed at a disadvantage in conducting the public business, as against their legal adversaries and that the public is entitled to effective legal counsel when it is involved in litigation but such is impossible if a public body may not confer privately with its attorney. At the center of this argument is the concept of attorney-client confidentiality. Language from an opinion issued by the California Court of Appeals [*Sacramento Newspaper Guild v. Sacramento Co. Bd. of Supervisors*, 263 Cal.App. 41, 69 Cal.Rptr. 480 (1968)] aptly capsulizes petitioners' position.

"Public agencies are constantly embroiled in contract and eminent domain litigation and, with the expansion of public tort liability, in personal injury and property damage suits. Large-scale public services and projects expose public entities to potential tort liabilities dwarfing those of most private clients. Money actions by and against the public are as contentions as those involving private litigants. The most casual and naive observer can sense the financial stakes wrapped up in the conventionalities of a condemnation trial. Government should have no advantage in legal strife; neither should it be a second-class citizen. We reiterate what we stated in the supersedeas aspect of this suit, *Sacramento Newspaper Guild v. Sacramento County Bd. of Supervisors*, supra, (Citation omitted): 'Public agencies face the same hard realities as other civil litigants. An attorney who cannot confer with his client outside his opponent's presence may be under insurmountable handicaps.' * * "

"Settlement and avoidance of litigation are particularly sensitive activities, whose conduct would be grossly confounded, often made impossible, by undiscriminating insistence on open lawyer-client conferences. In settlement advice, the attorney's professional task is to provide his client a frank appraisal of strength and weakness, gains and risks, hopes and fears. If the public's 'right to know' compelled admission of an audience, the ringside seats would be occupied by the government's adversary, delighted to capitalize on every revelation of weakness. * * * "

We have at issue two competing policy commitments, the need to have the public's business conducted in the open, and the principle of attorney-client confidentiality. The underlying goals of the "open meeting laws" can not be seriously challenged. If an informed citizenry is to meaningfully participate in government or at least understand why government acts affecting their daily lives are taken, the process of decision making as well as the end results must be

conducted in full view of the governed. On the other hand, public bodies are charged with the duties and responsibilities of representing the public and protecting their property and their rights. In most cases the power to negotiate, contract and litigate are absolutely essential prerequisites to the proper performance of governmental functions the public bodies are duty bound to discharge. Without such authority public works could not be implemented (condemnation), the public treasury protected (claims against the government), or obligations owing to the public enforced.

The issue presented is whether the Legislature abrogated the attorney-client confidentiality and the right of public bodies to confer privately with their attorneys concerning pending or impending litigation.

In support of their contention that the Legislature did not intend to abrogate attorney-client confidentiality, petitioners point out that during the same Legislative session the Open Meeting Act was approved the Legislature also approved a "Privilege Against Disclosure" enacted (12 O.S.Supp. 1977, § 418.1–418.2), and both enactments, by specific language, became effective on the same date, October 1, 1977.

Sec. 418.2(A) of the Privilege Against Disclosure enactment defines terms as used in the Act, two of which are "Client" and "confidential" communications.

12 O.S.Supp.1977, § 418.2(A) provides in pertinent part:

"2. A "client" is a person, public officer, or corporation, association, or other organization or entity, either public or private, who consults an attorney with a view towards obtaining legal services or is rendered professional legal services by an attorney;

\* \* \* \* \* \*

"5. A Communication is "confidential" if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendi-

tion of professional legal services to the client or those reasonably necessary for the transmission of the communication."

12 O.S.Supp.1977, § 418.2(B) and (D) provide further:

"B. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:

\* \* \* \* \* \*

"D. There is no privilege under this rule:

\* \* \* \* \* \*

6. As to a communication between a public officer or agency and its attorney unless the communication concerns a pending investigation, claim or action and the court determines that disclosure will seriously impair the ability of the public officer or agency to process the claim or conduct a pending investigation, litigation or proceeding in the public interest."

■ Respondent recognizes that "public entities" have attorney-client privileges under the above provisions but argues that the Legislature has waived such privilege for "public entities" which are also "public bodies" as specified in the Open Meeting Act, to the extent that such public bodies may not meet privately with their attorneys. In our opinion, the "Privilege Against Disclosure" enactment is applicable not only to public entities but all "public bodies" that are within the purview of the "Open Meeting Act".

The above provisions clearly disclose that a public body may have "confidential" communications with its attorney and that such public body may have the privilege of refusing to disclose or prevent disclosure of a confidential communication. Respondent's construction of the "Open Meeting Act" necessarily precludes there ever being any "confidential" communication between the public body and its attorney. This is because a communication between a public body and its attorney is by definition under

§ 418.2(A)(5), supra, not "confidential" where there is intention that the communication be disclosed to third persons. The very purpose of the "Open Meeting Act" is to compel disclosure to third persons, the public in general.

■ Also, subparagraph (6), supra, is a Legislative recognition that public disclosure of confidential communications between a public body and its attorney might seriously impair the ability of the public body to process a claim or conduct a pending investigation, litigation, or proceeding in the public interest. Query: If as argued by respondent, a public body may not privately discuss with its attorney pending or impending litigation, what is the effect of subparagraph (6)? Respondent's construction of our "Open Meeting Act" would for all practical purposes repeal by implication the "Privilege Against Disclosure Act" in so far as it is applicable to public bodies. When construing statutes passed at the same session of the Legislature and at nearly the same time, there is a strong presumption against implied repeal of one statute by the other. *In re Adoption of Lewis,* Okl., 380 P.2d 697 (1963).

■ If a public entity is prohibited from conferring privately with its attorney, such prohibition must be by virtue of the "Open Meeting Act" because the "Privilege Against Disclosure Act" (12 O.S.Supp.1977, § 418.2) is clear and unambiguous in that it continues the attorney-client confidentiality rule between public bodies and their attorneys. We find no Legislative intention to abrogate the principle of attorney-client confidentiality where public bodies are involved. When the "Privilege Against Disclosure Act" (12 O.S.Supp.1977, 481.1 et seq.) is considered in connection with the "Open Meeting Act" (25 O.S.Supp.1977, §§ 301 et seq.) we find a Legislative design whereby executive sessions may be held for confidential communications between a public body and its attorney, but only if the communications concern a pending investigation, claim, or action, and disclosure of the matters discussed would seriously impair the ability of the public body to process

the claim or conduct the pending investigation, litigation or proceeding in the public interest. The public body, with the advice of its attorney, would determine whether it would be proper to hold executive sessions for the purposes above set forth.

Since the effect of our holding herein is to overrule respondent's opinion No. 77–222, there is no need to issue the requested writ.

Original jurisdiction assumed; Attorney General Opinion No. 77–222 overruled; and Writ of Prohibition and/or Mandamus denied as herein explained.

LAVENDER, V. C. J., and DAVISON, WILLIAMS, BERRY and BARNES, JJ., concur.

HODGES, C. J., and SIMMS and DOOLIN, JJ., dissent.

SIMMS, Justice, dissenting:

I must respectfully dissent to the majority opinion for the following reasons:

(1) This is an original action for a declaratory judgment and the Supreme Court has no power to render a declaratory judgment; and

(2) Even if this Court could render declaratory judgments, it could not do so here, for this matter is not an actual case or controversy; and

(3) Even if this were an actual case or controversy which was otherwise properly before us, the only petitioners who have filed briefs do not have standing to seek relief; and

(4) If it is assumed for the purpose of argument, that this is a case or controversy which is properly presented for our determination by proper parties—the majority has nonetheless reached the wrong result.

1.

The Association of Municipal Attorneys and assorted public entities do not like Opinion No. 77–222 rendered by the Attorney General and they have filed in this Court an "application to assume original jurisdiction and construe provisions of the

Oklahoma Open Meeting Act", requesting for relief that the opinion be "overruled or ordered withdrawn."

Petitioners contend that this Court may assume original jurisdiction and render a declaratory judgment in this action notwithstanding 12 O.S.Supp.1977, § 1651 which provides that:

"*District courts* may, in cases of actual controversy, determine rights, status, or other legal relations  .  .  ."

Original actions for declaratory judgment are not within the jurisdiction of this Court.[1]  Art. 7, § 4, Okla.Const.

### 2.

An opinion by the Attorney General is not a final judgment or a final order (12 O.S., Ch. 15, App. 2, Rule 1.10); neither is it a judicial declaration of the rights of the parties.  Unlike this Court, the Attorney General *is* empowered to issue advisory opinions to certain State officers and officials upon questions of law submitted by them concerning matters in which they are officially interested.  74 O.S.1971, § 18b(d), (e).  It is the duty of a public officer with notice thereof to follow the opinion of the Attorney General until relieved of that duty by a court of competent jurisdiction or until this Court should hold otherwise, (*Rasure v. Sparks,* 75 Okl. 181, 183 P. 495 (1919); *State v. District Court of Mays Co.,* Okl., 440 P.2d 700 (1968); *Pan American Petroleum Corp. v. Board of Tax-Roll Cor.,* Okl., 510 P.2d 680 (1973))—but the Attorney General has no authority or power to enforce compliance with his opinion.  Beyond furnishing his opinions in writing when they are requested, he has the power and duty only to keep and file copies of all opinions (74 O.S.1971, § 18b(*1*)), to publish them annually and distribute copies of the bound volume as directed by statute (74 O.S.1971, § 20).

Actual controversies involve parties and facts and they present questions as to how the law applies to those precise factual situations.  We have none of that here.  Here we have only an abstract question: May a public body go into executive session to confer with its attorney in spite of the new Open Meeting Law and the opinion of the Attorney General interpreting same?

The traditional position of this Court is that we do *NOT* determine abstract propositions.

"The duty of a court is to determine actual controversies when properly brought before it, and not to give opinions on  *  *  *  abstract propositions."

*Ferk v. Hall,* 119 Okl. 251, 249 P. 1106, 1109; *See, also, State v. Cities Service Oil Co.,* Okl., 317 P.2d 722 (1957).

I realize that because we have never before ruled directly on the correctness of an Attorney General's opinion, we have no procedures formulated to guide us in reaching our decision.  I'm sure that we will soon be inundated with requests to review other opinions, so I offer this suggestion for future decisions: we should confine our review to that question which the Attorney General answered.

Here the Attorney General was asked: "With the enactment of HB 1416 (the Open Meeting Law) by the first session of the 36th Legislature (1977)—is the Attorney Generals opinion No. 75–311 still in full force and effect?"

His affirmative answer was based on the following:

"*Under the language of House Bill 1416* of the First Regular Session of the Thirty-Sixth Oklahoma Legislature, a public body may not meet in executive session for the purpose of privately conferring with the lawyer representing the body."

The question and answer were expressly limited to the language of the Open Meeting Law alone.  No consideration was given to the effect of any other statutory provision on the issue.

---

1. This request for declaratory judgment as an original action must be distinguished from those instances where, by statute, we do have jurisdiction to render declaratory judgments in

an original action in *specific* situations.  See, 82 O.S.1971, § 882; *Application of Grand River Dam Auth.,* Okl., 554 P.2d 5 (1976).

The majority opinion of the Court addresses *this* question:

> *What is the effect of the 'Privilege Against Disclosure Act' on the Open Meeting Act* insofar as it is applicable to the right of public bodies to meet in private with their attorneys?

The majority's answer is that the:

'Privilege Against Disclosure Act' carves out an exception to the 'Open Meeting Act's' prohibition against executive sessions for attorney consultations.

I do not understand how the majority's holding "overrules" the Attorney General's Opinion since that Opinion was an interpretation of only the "Open Meeting Act" (H.B.1416), and the majority addresses the separate and distinct issue of the effect of the "Privilege Against Disclosure Act" on the "Open Meeting Act."

### 3.

The Association of Municipal Attorneys does not have standing to bring this "action". Privileged communication between attorney and client is a creature of statute which exists for the benefit of the *client*, not the attorney. *Evans v. State,* 5 Okl.Cr. 643, 115 P. 809 (1911); 12 O.S.Supp.1977, § 418.2(B).

### 4.

Additionally, I do not agree with the majority's resolution of the question it addressed. The provisions of the "Privilege Against Disclosure Act" in question, 12 O.S. Supp.1977, § 418.2(D)6, are clear and unequivocal:

> "D. There is *no privilege* under this rule:
>
> \*   \*   \*   \*   \*   \*
>
> "6. As to a communication between a public officer or agency and its attorney *unless* the communication concerns a pending investigation, claim or action and *the court determines* that disclosure will seriously impair the ability of the public officer or agency to process the claim or conduct a pending investigation, litigation or proceeding in the public interest."

It may be, as the majority holds, that this provision does create an exception to the Open Meeting Law. There is nothing, however, in this statute which supports that majority's holding that "*the public body, with the advice of its attorney, would determine* whether it would be proper to hold executive sessions . . ." The decision as to the necessity of a public body going into executive session with its attorney under the above cited statute is clearly placed with *the court.* The burden is greater than it would be if the public body and its attorney made the decision. The legislature obviously intended the burden to be greater.

And, finally, even though the majority purports to deny writs of prohibition and/or mandamus, it should be re-emphasized that the petitioners have never prayed for either. Petitioners have sought only an original action for declaratory judgment. In granting the requested relief, the majority has this day established a new form of action. I would refuse to assume original jurisdiction.

I am authorized to state that Justice Doolin joins in this dissent.