Jerry D. BERRY, d/b/a Eastside Denture Studio, Don Adams, d/b/a Osage Denture Clinic, Jim Barrentine, d/b/a Sand Springs Denture Clinic, Larry W. Barnes, and R. Sterling Killian, d/b/a Northeast Denture Clinic, Appellants,

v.

The BOARD OF GOVERNORS OF the REGISTERED DENTISTS OF OKLAHOMA, Appellee.

Nos. 53472–53475.

Supreme Court of Oklahoma.

March 25, 1980.

Rehearing Denied June 9, 1980.

Hammons & Wolking, Inc., by Mark E. Hammons, El Reno, for appellants.

James E. Poe, Tulsa, for appellee.

HODGES, Justice.

The Board of Governors of the Registered Dentists of Oklahoma [Board], appellee, was granted a temporary injunction against the appellants, Jerry D. Berry, d/b/a Eastside Denture Studio, Don Adams, d/b/a Osage Denture Clinic, Jim Barrentine, d/b/a Sand Springs Denture Clinic, and Larry W. Barnes, and R. Sterling Killian, d/b/a Northeast Denture Clinic, [denturists], to prevent them from engaging in the alleged unlicensed and unlawful practice of dentistry and from any advertisements relating thereto. The denturists were sued individually, but the cases were consolidated by the trial court for the hearing on the temporary injunction, and for the purposes of this appeal.

The denturists asserted that the Board lacked the capacity to sue because of the unconstitutionality of the statutes creating the Board; that the Board was not the real party in interest; and that even if the Board had the capacity to sue, it failed to follow the statutory requirements of the Open Meeting Law, 25 O.S.Supp.1979 §§ 301–314, in initiating the action. The trial court entered the injunction, and the appellants appealed raising the same issues. The merits of the issuance of injunctive relief is not before us.

I

■ The denturists charge the injunction was improperly brought by the Board because the State Dental Act, 59 O.S.1971 §§ 328.1–328.52, grants an unlawful delegation of public power to a private group and that the Board was not the real party in interest. We do not agree. The Board is a statutory and constitutional entity, with the power to seek injunctive relief specifically granted by 59 O.S.1971 § 328.49.[1] The right

---

1. The Okla.Const. art. 5, § 39 requires the Legislature to create a Board of Dentistry and prescribe its duties.

Title 59 O.S.1971 § 328.49 provides in pertinent part:

of the Board of Governors, as well as that of "The Registered Dentists of Oklahoma," to bring an action for injunctive relief was acknowledged in *Lamb v. Registered Dentists*, 492 P.2d 1401, 1402 (Okl.1972).

## II

The allegation is made by the denturists that under the statutory schematic system of the Dental Act, they have been denied equal protection of the law. The question of whether the prescribed statutory rules and regulations are valid or invalid is not presented; the issue is the authority of the Board to act when it allegedly is unconstitutionally comprised.

Dentistry as a profession has long been the subject of regulation, and the denturists likewise may be subject to reasonable regulations where the public health or welfare is involved.[2] The denturists concede the legislature has the authority to regulate the practice of prosthetic dentistry. They assert it is a denial of equal protection of the law and deprivation of due process for a Board which was selected by and composed exclusively of dentists to regulate dental technicians [denturists] and dental hygenists. At the time the injunctions were filed, the eight members of the Board were registered dentists. An amendment in 1979 enlarged the membership of the Board to include one dental hygenist, and two members to represent the public. The dentist members are elected by the dentists residing in eight districts; the hygenist by legally licensed dental hygenists residing in the State of Oklahoma. Two public representative members are appointed by the governor, subject to confirmation by the senate. These members may not be dentists, dental surgeons, dental hygenists or dental technicians, or be related by blood or marriage within the third degree to any such person.[3] Although the practice of dentistry includes dentists, dental hygenists and dental technicians,[4] dental technicians have no representation on the Board.

Appellants cite *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973) where the court held "[T]hose with substantial pecuniary interest in legal proceedings should not adjudicate [those] disputes." There, the court held the Alabama Board of Optometry was a suspect body because only members of the Alabama Optometric Association could be members of the Board, the result of which 92 of the 192 practicing optometrists in Alabama were denied participation in the government of their own profession. Thus, optometrists in private practice were adjudicating licensed optometrists who were employed by other persons or entities which by such employment were excluded from association and board membership.

In the present case, we do not have denturists regulating other denturists who are excluded, but a board created by the legislature composed of dentists who have been charged with the enforcement of statutes relating to the practice of prosthetic dentistry. While there may be some pecuniary interest involved, we cannot say, as a matter of law, the pecuniary interest is substantial or the Board is an inherently suspect body.

█ The Board as constituted is not independent to the extent that it can impose limitations or regulations on the practice of prosthetic dentistry. The power to regulate the practice is imposed by statute and the Board's authority extends only to its enforcement. Therefore, we find no unconstitutional deprivation of equal protection or due proces of law.

In *Fosket v. Michigan State Board of Dentistry*, 79 Mich.App. 127, 261 N.W.2d 238 (1978) it was determined that dental hygenists were not denied equal protection under the law under a statute which enabled the State Board of Dentistry to supervise, license and examine them, although they were prohibited by the Dental Act from serving on the Board of Dentistry.

". . . The writ of injunction, without bond, is also made available to the Board of Governors for the enforcement of this Act. . . ."

2. See Annot., Regulation of Prosthetic Dentistry, 45 A.L.R.2d 1243 (1956).

3. 59 O.S.1971 § 328.7.
   59 O.S.Supp.1979 § 328.7.

4. 59 O.S.1971 §§ 328.3, 328.19.

## III

The denturists also argue the Board failed to follow the Oklahoma Open Meeting Act, 25 O.S.Supp.1977 §§ 301–314 [Act], when it decided to seek injunctive relief against them. The Board counters with the argument that matters pertaining to litigation are part of a judicial proceeding and, therefore, exempt from the Open Meeting Act.

It is undisputed that the Board is a public body subject to the Act.[5] The Act requires that: minutes of meetings of public bodies be kept; the members present and absent be noted; all matters considered and actions taken be reflected,[6] and that the vote of each member be publicly cast and recorded.[7] The Board contends that because the petition was signed by a member of the Board and by the Board's attorney, the informal authorization of the Board is suffi-

cient to commence a legal proceeding. The testimony reflects that there was not a vote of the Board to initiate the proceedings; therefore, neither was there a recordation of the vote.[8]

Authorization to proceed with litigation is not a judicial proceeding. It may, however, involve the attorney-client privilege. In *Oklahoma Ass'n of Municipal Attorneys v. State*, 577 P.2d 1310, 1315 (Okla.1978) this Court considered the attorney-client confidentiality rule between public bodies and attorneys representing public bodies. The Court reconciled the apparent conflict between the Act and the Privilege Against Disclosure Act, 12 O.S.Supp.1977 § 418.2 by holding:

"  .  .  . [W]e find a Legislative design whereby executive sessions may be held for confidential communications between

---

**5.** Public body is defined by 25 O.S.Supp.1977 § 304(1) as:

" 'Public body' means the governing bodies of all municipalities located within the State of Oklahoma, boards of county commissioners of the counties in the State of Oklahoma, boards of public and higher education in the State of Oklahoma and all boards, bureaus, commissions, agencies, trusteeships, authorities, councils, committees, public trusts, task forces or study groups in the State of Oklahoma supported in whole or in part by public funds or entrusted with the expending of public funds, or administering public property, and shall include all committees or subcommittees of any public body. It shall not mean the state judiciary or the State Legislature or administrative staffs of public bodies, including, but not limited to, faculty meetings and athletic staff meetings of institutions of higher education, when said staffs are not meeting with the public body."

See also Attorney General Opinion No. 78–132, June 20, 1978.

The Board receives public funds from the state pursuant to 59 O.S.Supp.1979 § 328.42.

**6.** Minutes of meetings are required to be kept pursuant to 25 O.S.Supp.1977 § 312:

"The proceedings of a public body shall be kept by a person so designated by such public body in the form of written minutes which shall be an official summary of the proceedings showing clearly those members present and absent, all matters considered by the public body, and all actions taken by such public body. The minutes of each meeting shall be open to public inspection and shall reflect the

manner and time of notice required by this Act."

**7.** It is required by 25 O.S.Supp.1977 § 305 that all votes be publicly cast and recorded."

"In all meetings of public bodies, the vote of each member must be publicly cast and recorded."

**8.** The testimony of the President of the Board was that there was no resolution passed by the Board directing specific action against the appellants that this was a part of the annual contract with the Board's attorney.

The lawyer for the Board testified that there was not a specific resolution:

Q:  .  .  . [I]s there any recorded vote of the Board of Governors of Registered Dentists authorizing the commencement of this action?

A: Insofar as this action, a vote that said: Poe, file these lawsuits, I found none or I was made aware of none.  .  .  .

[Transcript, Vol. II, pg. 17]

Q: Is it your testimony, then, that there is no record in the minutes of a motion authorizing—now, we are not talking about reports—of a motion authorizing the filing of these lawsuits?

A: That's what I indicate, counsel. There is no record in the minutes of a motion that said by name or number or whatever for me to file this lawsuit.

Q: Is there any resolution which has been reduced to writing which authorizes the commencement of these actions?

A: No.  .  .  .

[Transcript, Vol. II, pg. 18]

a public body and its attorney, but only if the communications concern a pending investigation, claim, or action, and disclosure of the matters discussed would seriously impair the ability of the public body to process the claim or conduct the pending investigation, litigation or proceeding in the public interest. The public body, with the advice of its attorney, would determine whether it would be proper to hold executive sessions for the purposes above set forth."

■ This case is clearly distinguishable on four points: 1) Although the municipal attorneys' case permits executive sessions on the advice of counsel in certain specified instances, it does not abrogate the statutory requirement that minutes be kept and recorded; 2) An executive session of a public body is not permitted unless a majority of a quorum of the members present vote to hold an executive session; 3) Even if an executive session is properly held and minutes are recorded which might be determined to qualify under the attorney-client privilege of confidentiality, the statute requires that any vote or action taken in an executive session must be in a public meeting with the vote of each member publicly cast and recorded; 4) Informal gatherings among a majority of the members to decide on any course of action or to vote on any matter is prohibited by the Act.[9]

■ We find that executive sessions may be held between a public body and its attorney to discuss litigation where disclosure of the matter discussed would seriously impair the proceeding. However, when it is decided to file suit and initiate proceedings against a party, the vote must be publicly case and recorded. Under the record presented, the Board had the authority to seek injunctive relief against the alleged unauthorized practice of dentistry.[10] However, the purpose of a governing board public body is to participate in and deliberate upon decisions which are in the best interest of the public and the organization. It is not a proper function for the Board to abdicate its responsibility for decisionmaking to its attorney. The Act is extremely clear that minutes must be recorded and votes publicly cast.[11]

REVERSED.

LAVENDER, C. J., and WILLIAMS, BARNES, SIMMS, DOOLIN and HARGRAVE, JJ., concur.

OPALA, J., concurring in part, dissenting in part.

IRWIN, V. C. J., dissenting.

IRWIN, Vice Chief Justice, dissenting.

In discussing the Oklahoma Open Meeting Act in connection with the attorney-client confidentiality rule, the majority states:

"Although the municipal attorneys' case (577 P.2d 1310) permits executive sessions on the advice of counsel in certain specified instances, it does not abrogate the statutory requirement that minutes be kept and recorded; . . . Even if an executive session is properly held and minutes are recorded which might be determined to qualify under the attorney-client privilege of confidentiality, the statute requires that any vote or action taken in an executive session must be in a public meeting with the vote of each member publicly cast and recorded."

In my opinion, the Oklahoma Open Meeting Act has no application whatsoever in those instances when an executive session is "properly held"[1] for confidential communications between a public body and its attorney because the attorney-client privilege of

9. 25 O.S.Supp.1977 § 306 prohibits circumvention of the Act. It provides that:
   "No informal gatherings or any electronic or telephonic communications among a majority of the members of a public body shall be used to decide any action or to take a vote on any matter."

10. See 59 O.S.1971 § 328.39(1).

11. 25 O.S.Supp.1977 § 305.

1. "Properly held" as used herein means within the limitation set forth in Oklahoma Ass'n of Municipal Attorneys v. State, Okl., 577 P.2d 1310 (1978).

confidentiality extends to all phases of such sessions. I respectfully dissent.

I am authorized to state that OPALA, J., concurs in the views expressed herein.