205 W.Va. 481

519 S.E.2d 179

**Nathan PETERS and Jack Hoffman, Appellants,**

v.

**The COUNTY COMMISSION OF WOOD COUNTY, Appellee.**

No. 25354.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 26, 1999.

Decided July 14, 1999.

Walt Auvil, Esq., Pyles & Auvil, Parkersburg, West Virginia, Attorney for Appellants.

Joseph P. Albright, Jr., Esq., Albright, Bradley & Ellison, Charleston, West Virginia, Attorney for Appellee.

David Grubb, Citizens Action Group, Charleston, West Virginia, Attorney for Amicus Curiae, WV Citizens Action Group.

Robert M. Bastress, Morgantown, West Virginia, Attorney for Amicus Curiae, American Civil Liberties Union of WV.

WORKMAN, Justice:

Appellants, Petitioners below, Nathan Peters and Jack Hoffman, (hereinafter the "Appellants"), appeal the entry of summary judgment by the Circuit Court of Wood County in favor of Appellee, Respondent below, the County Commission of Wood County, (hereinafter the "Commission" or the "Appellee"). This appeal arose out of a complaint for injunctive and other relief filed by Appellants challenging that three closed meetings of the Commission violated the Open Governmental Proceedings Act (hereinafter the "Act"), West Virginia Code §§ 6–9A–1 to –7 (1993 and Supp.1998). The Commission defended on the grounds that one of the three meetings fell within the exceptions contained within the Act and the other meetings were closed to the public because the discussion involved privileged attorney-client communications.

The circuit court found that there was no remedy for such violations of the Act such as alleged by Appellants, even if such violations did in fact occur. The circuit court also ruled, in dismissing a motion to compel a Rule 30(b)(6) deponent to answer certain questions filed by Appellants, that the attorney-client privilege continues to exist independent of the Act, thereby exempting attorney-client communications from the Act. Appellants contend that the Act specifically provides for remedies for violations of the Act and that the attorney-client privilege cannot be relied upon by Appellee to exempt a meeting from the Act.

## I. Background Facts

Appellants allege that a July 24, 1997, non-public, unnoticed, closed meeting of the Commission violated the Act. Appellants learned of this meeting from a newspaper article which stated that the meeting occurred and that its purpose was purportedly to discuss the legal matters surrounding the proposed annexation of Mineral Wells, West Virginia.

The Commission asserts in an affidavit filed below that it called this executive session to discuss certain matters with its attorney (Wood County's prosecuting attorney), which were proper subjects for an executive session under the Act and were also protected by the attorney-client privilege. The minutes of the July 24, 1997, executive session cite statutory exceptions found in the Act as the sole basis for the session and do not refer in any way to the attorney-client privilege. The executive session was attended by the three Commissioners, the Wood County prosecuting attorney, and an assistant prosecuting attorney. The session was convened after a regular open meeting and the public was excluded.

Appellants later amended their complaint, without objection, to allege that two additional closed meetings of the Commission, occurring on August 21, 1997, and November 3,

1997, also violated the Act. The Commission responded that these two meetings were closed to the public because the Commission was consulting with its attorney, and such communications were therefore privileged and confidential. The August 21, 1997, meeting was attended by the three Commissioners and the Wood County Prosecuting Attorney. The public was not given notice of and was excluded from this meeting. The three Commissioners and the Wood County Prosecuting Attorney attended the November 3, 1997, closed meeting. This meeting was also unnoticed.

The Commission designated Commissioner David A. Couch as its Rule 30(b)(6) [of the West Virginia Rules of Civil Procedure] representative in response to discovery requests filed by Appellants. Appellants deposed Commissioner Couch on two separate occasions. During the first deposition, Commissioner Couch refused to answer several questions regarding the nature of the July 24, 1997, closed meeting on the advice of his attorney, and asserted the attorney-client privilege. Appellants filed a motion to compel. In a letter to all counsel of record, Judge Hill denied the motion because he was of the opinion that the attorney-client privilege continues to exist independent of the Act, even though the privilege is not specifically enumerated as an exception.

Appellants later deposed Commissioner Couch again in regard to the August 21, 1997, and November 3, 1997, meetings. Once again, Couch refused to answer almost all substantive questions on the advice of his counsel and Appellants once again filed a motion to compel, which was subsequently denied as moot. Commissioner Couch did testify that the intent of the August 21, 1997, meeting was to obtain clarification of West Virginia law from the prosecuting attorney. He further testified that the only two subjects discussed during these two meetings were interpretation of law and pending litigation. The circuit court then granted the Commission's motion for summary judgment.

Because of the lack of meaningful discovery in this case and because the circuit court failed to hold an in camera hearing to determine the nature of the discussions that oc-curred during the three closed meetings, the record does not reflect what was discussed at these meetings. Further no recordings of these closed meetings exist for review. Because of these factual inadequacies, we are limited in our holding today.

## II. Standard of Review

We are asked to review the circuit court's award of summary judgment in favor of the Commission, and the circuit court's finding that privileged attorney-client communications are exempt from the open meetings requirement of the Act. Appellants contend that the circuit court erred in granting summary judgment because remedies are clearly available for the violations of the Act alleged by Appellants and also contend that communications within the attorney-client privilege are not exempt from the Act's requirement that all meetings must be public.

 We review this summary judgment issue under the standard enunciated in syllabus point one of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), as follows: "A circuit court's entry of summary judgment is reviewed *de novo.*" *Id.* at 190, 451 S.E.2d at 756. We will reverse a circuit court's award of summary judgment if there is a genuine fact to be resolved or if the moving party is not entitled to the judgment as a matter of law. *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 59, 459 S.E.2d 329, 336 (1995).

 We have repeatedly held that under Rule 56(c) of the West Virginia Rules of Civil Procedure,

" '[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

Syl. Pt. 1, *Williams*, 194 W.Va. at 54, 459 S.E.2d at 333.

 Finally, with respect to the issue of whether or not attorney-client communica-

tions are exempt from the open meetings requirement in the Act, we must review such legal issue de novo. " 'Where the issue on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.' Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995)." Syl. Pt. 1, *University of W.Va. Bd. of Trustees ex rel. W.Va. Univ. v. Fox*, 197 W.Va. 91, 475 S.E.2d 91 (1996).

### III. Statutory Remedies for Violations of the Open Government Proceedings Act

■ As stated above, the sole basis for the circuit court's summary judgment order is its finding that even if Appellants' allegations in their complaint were true, no remedy exists under the Act. Such finding by the circuit court was wrong in view of the clear language of the Act.

West Virginia Code § 6–9A–6 (Supp.1998) provides, in pertinent part, that "[t]he circuit court in the county where the public body regularly meets shall have jurisdiction to enforce this article upon civil action commenced by any citizen of this state within one hundred twenty days after the action complained of was taken or the decision complained of was made." Appellants alleged that the first closed meeting occurred on July 24, 1997, and the Appellants filed their complaint on August 20, 1997, clearly within the one hundred twenty (120) day limitation prescribed by statute. *See id.* The second and third closed meetings occurred after the filing of the complaint and Appellants subsequently filed to amend their complaint to include these two meetings.

The Act further provides that "[t]he court is empowered to compel compliance or enjoin non-compliance with the provisions of this article and to annul a decision made in viola-

tion thereof. An injunction may also order the subsequent actions be taken or decision made in conformity with provisions of this article...." *Id.* This code section also provides that "[u]pon entry of any such order [which compels compliance or enjoins non-compliance], the court may, where the court finds that the governing body intentionally violated the provisions of this article, order such governing body to pay the complaining persons necessary attorney fees and expenses." *Id.*[1]

Finally, the Act provides for criminal sanctions for its violation in certain circumstances:

> Any person who is a member of a public or governmental body required to conduct open meeting in compliance with the provisions of this article and who willfully and knowingly violates the provisions of this article shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than one hundred dollars nor more than five hundred dollars, or imprisoned in the county jail not more than ten days, or both fined and imprisoned.

W.Va.Code § 6–9A–7.

Thus, the Act clearly provides both civil and criminal remedies for its violation. In fact, such remedies were specifically pled in Appellants' complaint and amended complaint. As argued by Appellants, there is no basis in law or fact for the circuit court's finding that Appellants had no remedy for the violations they alleged.[2]

### IV. Attorney–Client Privilege

We next address whether or not a public agency may hold a closed meeting based solely upon the attorney-client privilege. The Commission has defended its closing of the three meetings in issue based upon the fact that the agency was meeting with its attorney, and, therefore, such communica-

---

**1.** West Virginia Code § 6–9A–6 also provides for the opposite situation:

> Where the court, upon denying the relief sought by the complaining person in the action, finds that the action was frivolous or commenced with the primary intent of harassing the governing body or any member thereof or, in the absence of good faith, of delaying any meetings or decisions of the governing

body, the court may require the complaining person to pay the governing body's necessary attorney fees and expenses.

**2.** We make no determination at this juncture, however, with respect to whether the violations alleged by Appellants occurred or, if so, whether such violations would result in any of the remedies or sanctions found in the Act.

tions were privileged and necessarily the meeting had to be closed.

During the course of the litigation before the circuit court, Appellants filed two motions to compel after Commissioner David Crouch, on advice of counsel, refused to answer several questions during two Rule 30(b)(6) depositions. The Commission's attorney argued that Commissioner Couch could not answer questions regarding what issues were discussed during the closed meetings because such information was protected by the attorney-client privilege. In a letter to all counsel of record, Judge Hill denied the first motion to compel and expressed the circuit court's opinion that "although the open-meetings statute does not expressly include attorney/client confidentiality privilege, the opinion of the Supreme Court of Appeals in *Manchin v. Browning*[3] contains language (although *dictum*) that leads me to believe that the privilege of the traditional attorney/client relationship continues to exist independent of the open-meetings statute...." Judge Hill ruled that the second motion to compel was moot in light of his ruling which granted the Commission

summary judgment, thereby dismissing the case.

■ The West Virginia Legislature clearly stated its purpose and policy in passing the Act in West Virginia Code § 6–9A–1:

The Legislature hereby finds and declares that public agencies, boards, commissions, governing bodies, councils and all other public bodies in this state exist for the singular purpose of representing citizens of this state in governmental affairs, and it is, therefore, in the best interests of the people of this state for all proceedings of all public bodies to be conducted in an open and public manner.

*Id.* The West Virginia Legislature has decreed that meetings by government entities should be public. West Virginia Code § 6–9A–3 provides that "[e]xcept as expressly and specifically otherwise provided by law, whether heretofore or hereinafter enacted, and except as provided in section four [§ 6–9A–4][4] of this article, all meetings of any governing body shall be open to the public." W.Va.Code § 6–9A–3. There is no question that the members of the Commission constitute a "governing body" subject to the Act's

---

3. The cite for that case is 170 W.Va. 779, 296 S.E.2d 909 (1982).

4. West Virginia Code § 6–9A–4 provides for exceptions as follows:

No provision of this article shall be construed to prevent the governing body of a public body from holding an executive session during a regular, special or emergency meeting, after the presiding officer has identified the authorization under this article for the holding of such executive session and has presented it to the governing body and to the general public, but no decision shall be made in such executive session.

An executive session may be held only upon a majority affirmative vote of the members present of the governing body of a public body as defined in this article for the following:

(1) Matters of war, threatened attack from a foreign power, civil insurrection or riot; or

(2) The appointment, employment, retirement, promotion, demotion, disciplining, resignation, discharge, dismissal or compensation of any public officer or employee, or other personnel matters, or for the purpose of conducting a hearing on a complaint against a public officer or employee, unless such public officer or employee requests an open meeting; or

(3) The disciplining, suspension or expulsion of any student in any public school or public college or university, unless such student requests an open meeting; or

(4) The issuance, effecting, denial, suspension or revocation of a license, certificate or registration under the laws of this state or any political subdivision, unless the person seeking such license, certificate or registration or whose license, certificate or registration was denied, suspended or revoked requests an open meeting; or

(5) The physical or mental health of any person, unless such person requests an open meeting; or

(6) Matters which, if discussed in public, would be likely to affect adversely the reputation of any person; or

(7) Any official investigation or matters relating to crime prevention or law enforcement; or

(8) The development of security personnel or devices; or

(9) Matters involving or affecting the purchase, sale or lease of property, advance construction planning, the investment of public funds or other matters involving competition which, if made public, might adversely affect the financial or other interest of the state or any political subdivision.

requirements.[5] The Commission does not argue that the three alleged violations were not, in fact, "meetings" as defined under the Act.[6] Furthermore, there appears to be no dispute that the Act does not contain a specifically enumerated attorney-client privilege exception. *See* W.Va.Code § 6–9A–4. The only issue is whether or not a public, governing body may close a meeting, which is otherwise required to be open under the Act, because the discussions in that meeting are protected by the attorney-client privilege.[7]

The Act provides for "executive sessions" which are specific exceptions to its "open meetings" requirement. *See* W.Va.Code § 6–9A–4 (set out in its entirety in note 4, *supra*). Clearly, however, instances where there are meetings between a public body and its attorney in which privileged communications are conducted are not enumerated as a specific exception under the Act. Accordingly, we must determine how the attorney-client privilege interfaces with the Act.

 In determining whether or not a closed school board meeting violated the Act, we have previously held in syllabus point four of *McComas v. Board of Education*, 197 W.Va. 188, 475 S.E.2d 280 (1996) the following:

> In drawing the line between those conversations outside the requirements of the Open Governmental Proceedings Act, W.Va.Code, 6–9A–1, *et seq.*, and those meetings that are within it, a common

sense approach is required; one that focuses on the question of whether allowing a governing body to exclude the public from a particular meeting would undermine the Act's fundamental purpose.

197 W.Va. at 191, 475 S.E.2d at 283. "From the legislative statement of policy and its constitutional underpinnings, it is clear this Court should accord an expansive reading to the Act's provisions to achieve its far-reaching goals." *Id.* at 197, 475 S.E.2d at 289. While it is clear that the Act's fundamental purpose is to ensure the right of the public to be fully informed regarding the conduct of governmental business, it is also clear that to require every gathering between members of public body to be open will "hamper the functioning of any government entity." *Id.* at 197, 475 S.E.2d at 289.

Both Appellants, as well as the West Virginia Citizen Action Group and the American Civil Liberties Union of West Virginia, who have filed a joint amicus curiae brief in this case, argue that the plain language of the Act provides no exception for attorney-client communications, and that it is the role of the legislature, not this Court, to create such an exception. *See City of College Park v. Cotter*, 309 Md. 573, 525 A.2d 1059, 1069 (1987) (holding that legislature, not courts, must determine scope and extent of open meetings of public body); *McKay v. Board of County Comm'rs*, 103 Nev. 490, 746 P.2d 124, 128 (1987) (holding that there was no explicit

5. West Virginia Code § 6–9A–2(3) (Supp.1998) defines "governing body" as "the members of any public body having the authority to make decision for or recommendations to a public body on policy or administration, the membership of which governing body consists of two or more members...." Subsection (5) of that same section defines "public body" as "any executive, legislative or administrative body or agency of this state or any political subdivision, or any commission, board, council, bureau, committee or subcommittee or any other agency of any of the foregoing...."

6. West Virginia Code § 6–9A–2(4) defines "meeting" as "the convening of a governing body of a public body for which a quorum is required in order to make a decision or to deliberate toward a decision in any matter...." *Id.*

7. The West Virginia Legislature amended significant portions of the Act, passing House Bill 2005 on March 21, 1999. Governor Underwood ap-

proved these amendments on April 8, 1999, and this new version of the Act will take effect ninety (90) days from its passage. Significantly, the Legislature included more exceptions to the Act. The new version of West Virginia Code § 6–9A–4(12) (1999) specifically provides that a public body may hold a closed executive session "[t]o discuss any matter which, by express provision of federal law or state statute or rule of court is rendered confidential, or which is not considered a public record within the meaning of the freedom of information act as set forth in article one, chapter twenty-nine-b of this code." H.B.2005. However, the preceding subsection, West Virginia Code § 6–9A–4(11) (1999) provides, in pertinent part, that "[n]othing in this article permits a public agency to close a meeting that otherwise would be open, merely because an agency attorney is a participant." H.B.2005.

exception to state's open meetings statute for attorney-client communications and that it was not for court to determine what legislature should have done); *Laman v. McCord,* 245 Ark. 401, 432 S.W.2d 753, 756 (1968) (rejecting attorney-client exception because it was not enumerated in state's open governmental proceedings act).

On the other hand, the Commission argues that the attorney-client privilege exists separately and independently from the Act, and, therefore, its closed meetings are completely protected by the privilege. Appellant relies on *Manchin v. Browning,* 170 W.Va. 779, 296 S.E.2d 909 (1982), for this proposition, arguing that the prosecuting attorney for Wood County is directed to provide legal services to the Commission,[8] just as the Attorney General for the State of West Virginia is directed to provide legal services to state agencies. *See* W.Va.Code § 5-3-1 (Supp. 1998). In *Manchin,* this Court found that the legislature has created the traditional attorney-client relationship between the Attorney General and the state officers he represents, holding in syllabus point three, in part, that "[b]y statute, the Attorney General is the legal representative of state officers and agencies sued in their official capacities." *Id.* at 781, 296 S.E.2d at 911. This Court further explained that the Attorney General must follow the Code of Professional Conduct when representing those officers, including preserving "the confidence and secrets of a client." *Id.* at 790, 296 S.E.2d at 920. Accordingly, the Commission argues that prosecuting attorney has the traditional attorney-client relationship with the Commission, including the attorney-client privilege.

Several jurisdictions have found that an exception exists to a state open meeting statute for consultations by public bodies with their attorneys, often reasoning that the open governmental meeting statute was not designed to supersede the pre-existing attorney-client common law or statutory privilege.[9] *See Dunn v. Alabama State Univ. Bd. of Trustees,* 628 So.2d 519, 529 (Ala.1993) (rejecting general claim that court should adopt rule that board was not permitted to meet in executive or secret session with its attorneys and could not discuss with its attorneys any item or thing, including pending or contemplated litigation, in executive session); *Smith County Educ. Ass'n v. Anderson,* 676 S.W.2d 328, 334 (Tenn.1984) (determining attorney-client exception exists but finding exception was limited to meetings in which discussion of present and pending litigation takes place, and, does not include any discussion regarding what action should be taken on advice of counsel); *Minneapolis Star & Tribune Co. v. Housing and Redevelopment Auth.,* 310 Minn. 313, 251 N.W.2d 620, 625 (1976) (holding attorney-client privilege existed so that not all discussions by attorney with governmental board had to be open to public, but that it should be invoked cautiously in situations other than threatened or pending litigation); *Oklahoma Ass'n of Mun. Attorneys v. State,* 577 P.2d 1310, 1315 (Okla.1978) (holding that legislature, by enacting open meetings act, did not act so as to abrogate attorney-client privilege of confidentiality and right of public bodies to confer privately with their attorneys in executive session concerning pending or impending litigation).

---

**8.** West Virginia Code § 7-4-1 (1993) provides that the prosecuting attorney shall "advise, attend to, bring, prosecute or defend, as the case may be, all matters, actions, suits and proceedings in which such county or any county board of education is interested." *Id.*

**9.** We have recognized that "[t]he attorney-client privilege is a common law privilege that protects communications between a client and an attorney during consultations." *State ex rel. Doe v. Troisi,* 194 W.Va. 28, 35–36, 459 S.E.2d 139, 146–47 (1995). In syllabus point two of *State v. Burton,* 163 W.Va. 40, 254 S.E.2d 129 (1979), we explained that "[i]n order to assert an attorney-client privilege, three main elements must be present: (1) both parties must contemplate that

the attorney-client relationship does or will exist; (2) the advice must be sought by the client from the attorney in his capacity as a legal adviser; (3) the communication between the attorney and client must be intended to be confidential." *Id.* at 40–41, 254 S.E.2d at 132. We have recently emphasized that "[c]onfidential communications made by a client or an attorney to one another are protected by the attorney-client privilege." Syl. Pt. 5, *State v. Rodoussakis,* 204 W.Va. 58, 511 S.E.2d 469 (1998). Also, Rule 1.6(a) of the West Virginia Rules of Professional Conduct states that "[a] lawyer shall not reveal information relating to representation of a client unless the client consents after consultation...." *Id.*

We believe that the Commission's position is the better approach. Pursuant to West Virginia Code § 6–9A–3, all meetings of a public body shall be open to the public, "except as expressly and specifically otherwise provided by law." *Id.* The common law of our state clearly recognizes the attorney-client privilege. *See* n. 9, *supra.* Thus, the attorney-client privilege falls within the parameters of the phrase "otherwise provided by law." W.Va.Code § 6–9A–3. However, there is also merit to Appellants' theory that, if an attorney-client privilege exemption exists in relation to the Act, such exemption must be narrowly drawn so as to not abrogate the spirit and purpose of the Act. In *Stockton Newspapers, Inc. v. Members of the Redevelopment Agency,* 171 Cal.App.3d 95, 214 Cal.Rptr. 561 (1985), the California Court of Appeal found that "[t]he attorney-client privilege in the context of the Brown Act [California's open meetings act] must be 'strictly construed.'" *Id.* at 566 (citing *Sacramento Newspaper Guild v. Sacramento County Bd. of Suprs.,* 263 Cal.App.2d 41, 69 Cal.Rptr. 480 (1968); *Sutter Sensible Planning, Inc. v. Board of Supervisors,* 122 Cal. App.3d 813, 176 Cal.Rptr. 342 (1981)). Further, the court found that:

> Public board members, sworn to uphold the law, may not arbitrarily or unnecessarily inflate confidentiality for the purpose of deflating the spread of the public meeting law. Neither the attorney's presence or happenstance of some kind of lawsuit may serve as the pretext for secret consultations whose revelation will not injure the public interest.

*Stockton Newspapers Inc.,* 214 Cal.Rptr. at 566 (quoting *Sacramento Newspaper Guild,* 263 Cal.App.2d 41, 69 Cal.Rptr. 480).

In *Smith County Education Association,* the Supreme Court of Tennessee recognized the existence of an attorney-client privilege exception to its state's open meetings law where the statute did not provide such exception. 676 S.W.2d at 334. However, in ruling that such a privilege existed, the Tennessee Supreme Court held that:

> The exception is limited to meetings in which discussion of present and pending litigation takes place. Clients may provide

counsel with facts and information about the lawsuit and counsel may advise them about the legal ramifications of those facts and the information given to him. However, once any discussion, whatsoever, begins among the members of the public body regarding what action to take based upon advice from counsel, whether it be settlement of otherwise, such discussion shall be open to the public and failure to do so shall constitute a clear violation of the Open Meetings Act.

*Id.*

We believe this is a sound approach. To find otherwise would circumvent the intent of our Act. For example, a public body could meet with its attorney for the sole purpose of keeping the meeting closed to the public, under the guise of the attorney-client privilege exception. This was an obvious concern the Legislature, as evidenced by the language found in the 1999 amendments to the Act, which, while recognizing an exemption for matters lawfully confidential, specifically provided that a public body cannot close a meeting merely because an agency attorney is present. *See* n. 7, *supra.*

 Accordingly, we hold today that privileged communications between a public body subject to the requirements of the Open Governmental Proceedings Act, West Virginia Code §§ 6–9A–1 to –7 (1993 and Supp. 1998), and its attorney are exempted from the open meetings requirement of the Act. Such executive session may be closed to the public only when the following statutory requirements are met: 1) a majority affirmative vote of the members present of the governing body of the public body, as required by West Virginia Code § 6–9A–4; 2) the notice requirements as found in West Virginia Code § 6–9A–3 shall be followed; and, 3) the written minutes requirements as found in West Virginia Code § 6–9A–5 shall be followed. However, a public agency is not permitted to close a meeting that otherwise would be open merely because an agency attorney is present.

 When a public body closes an open meeting on the basis that the matters to be discussed in that meeting are exempt

from the Act as a result of the attorney-client privilege and that claim is challenged, the circuit court should review in camera whether the communications do indeed fall within that privilege. In other words, a bare claim that the matters to be discussed in a meeting of a public body are privileged, if challenged, does not suffice to close the meeting. Because such a review did not occur in this case, we cannot determine whether or not the three sessions of the Commission at issue were properly closed. Accordingly, on remand the circuit court should hold an in camera hearing to determine whether or not the communications conducted during the three closed sessions fall within the limited attorney-client privilege exception enunciated herein.

Finally, Appellants also argue that the Commission waived its attorney-client privilege argument because it raised an affirmative defense which placed its attorney's advice in issue. Appellants argue that both the Commission's answer to their complaint and the Commission's affidavit in support of its motion for summary judgment, have raised the content of the challenged meetings as a defense to Appellant's claims. Appellants rely on *State ex rel. United States Fidelity and Guaranty Company v. Canady,* 194 W.Va. 431, 460 S.E.2d 677 (1995), wherein we held that "[a] party may waive the attorney-client privilege by asserting claims or defenses that put his or her attorney's advice in issue." *Id.* at 442, 460 S.E.2d at 688. This Court further explained that an attorney's legal advice only "becomes an issue where a client takes affirmative action to assert a defense and attempts to prove that defense by disclosing or describing an attorney's communication." *Id.* at 442, 460 S.E.2d at 688, n. 16. In this case, the Commission did not take the affirmative step of placing the legal advice it received in issue.[10] Instead, the Commission has simply asserted that an attorney-client privilege exception to the Act exists and that it relied on that exception in closing the three meetings in

issue. Accordingly, we find that this assignment of error has no merit.

## V. Conclusion

Based upon the foregoing, we reverse the order of the Circuit Court of Wood County granting summary judgment in favor of the Appellee and we remand this case with directions consistent with this opinion.

Reversed and remanded with directions.

---

**10.** In *Canady,* this Court cited examples of when a party may waive the attorney-client privilege by asserting defenses which put her attorney's advice in issue; i.e. where the attorney is sued for legal malpractice or where a party claims as a defense that she was misled by counsel. *Id.* at 442, 460 S.E.2d at 688.