IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Spring 2024 Term

_____

No. 23-ICA-248

_____

FILED

June 14, 2024

released at 3:00 p.m.
ASHLEY N. DEEM, DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

HD MEDIA COMPANY, LLC d/b/a CHARLESTON GAZETTE-MAIL,
Plaintiff Below, Petitioner

v.

WEST VIRGINIA UNIVERSITY BOARD OF GOVERNORS,
Defendant Below, Respondent

_____

Appeal from the Circuit Court of Monongalia County
Honorable Cindy Scott, Judge
Civil Action No. 20-C-300

AFFIRMED
_____

Submitted: March 19, 2024
Filed: June 14, 2024

Lonnie C. Simmons, Esq.
Robert M. Bastress, III, Esq.
DiPiero Simmons McGinley &
Bastress, PLLC
Charleston, West Virginia
Counsel for Petitioner

Natalie Atkinson, Esq.
Philip J. Combs, Esq.
Bryant J. Spann, Esq.
Thomas Combs & Spann,
PLLC
Charleston, West Virginia
Counsel for Respondent

JUDGE LORENSEN delivered the Opinion of the Court.
CHIEF JUDGE SCARR concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

LORENSEN, JUDGE:

In this appeal, HD Media Company, LLC d/b/a Charleston Gazette-Mail (the "Gazette"), a West Virginia-based news organization, alleges that the West Virginia University Board of Governors (the "Board") failed to comply with its obligations under the West Virginia Open Governmental Proceedings Act ("WVOGPA") when it entered executive sessions[1] to discuss topics that should have been considered openly. *See* W. Va. Code § 6-9A-1 *et seq*.

On review, we conclude that the circuit court's finding that the Board was justified in holding executive sessions regarding the disputed topics was not a clear error or abuse of discretion, based on the evidence offered and the applicable WVOGPA exemptions. Accordingly, we affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This matter centers around five meetings of the Board during the summer of 2020, which were conducted, at least partially, in executive session.[2] Over the course of these meetings, nine topics were discussed: (1) WVU's response to the Covid-19 pandemic; (2) deliberative and preliminary analysis regarding WVU's budget; (3) matters

---

[1] "'Executive session' means any meeting or part of a meeting of a governing body which is closed to the public." W. Va. Code § 6-9A-2(3) (2013).

[2] The meetings at issue were held on June 19, 2020, July 24, 2020, August 14, 2020, September 4, 2020, and September 18, 2020.

1

"concerning social justice" on campus; (4) "a talk with the [University's] athletic director about the 'outlook for this upcoming season'"; (5) the business college; (6) the emergency pay policy; (7) Federal Title IX regulations; (8) tuition and fees; and (9) capital projects. However, no vote, decision, determination, or official action was taken by the Board regarding these matters while in executive session.

On October 19, 2020, the Gazette filed a complaint[3] in the Circuit Court of Monongalia County against the Board, seeking declaratory and injunctive relief pursuant to the WVOGPA. Specifically, the Gazette alleged that the above topics did not fall within any exception to the WVOGPA's open meetings requirement, and as a result, the Board had violated the WVOGPA by discussing these matters in executive session.

The parties filed cross-motions for summary judgment.[4] In support of its motion, the Board designated four experts, who, via affidavits, explained the justification for considering these matters in executive session.[5] By affidavit, the University's Vice President for Strategic Initiatives, Rob Alsop, explained that he had personally prepared

---

[3] An amended complaint was filed on October 21, 2020.

[4] The Gazette filed its motion for partial summary judgment on October 29, 2021. The Board filed its cross-motion for summary judgment on December 10, 2021.

[5] The Board included affidavits from James Robert Alsop, WVU's Vice President for Strategic Initiatives; James Moeser, Ph.D., the Chancellor Emeritus of UNC-Chapel Hill; Thomas V. Flaherty, former Chair of the Board; and Nathan Dickmeyer, Ph.D., a higher education consultant.

confidential, deliberative memos regarding the above topics, which were presented to brief the Board on those issues. During the meetings at issue, present Board members considered these matters; however, no votes or official actions were taken while the Board was in executive session. Vice President Alsop stated that the Board entered executive session because the topics were commercially sensitive matters, relating to uncertainty arising from the Covid-19 pandemic, and that the Board was only at a deliberative stage, where public disclosure would have been harmful to the University's interests. The court noted that his testimony was unrebutted.[6] The Gazette did not submit any affidavits, depositions, or other evidence in support of its motion.

After a January 5, 2022, hearing, the circuit court granted partial summary judgment for the Board. In its February 27, 2023, order, the circuit court concluded that the first three topics at issue[7] fell within the commercial competition exception to the WVOGPA, pursuant to West Virginia Code § 6-9A-4(b)(9) (1999). Applying this provision, the circuit court determined that the Board's response to the Covid-19 pandemic, the discussion of budgets and social justice issues within that context, all implicated commercial interests under subsection (b)(9). In reaching that conclusion, the court found

---

[6] The court also noted that the expert affidavits, where they expressed opinions on whether the defendants violated the WVOGPA, were inadmissible and would not be considered by the court.

[7] Specifically: (1) WVU's response to the Covid-19 pandemic; (2) deliberative and preliminary analysis regarding WVU's budget; and (3) matters "concerning social justice" on campus.

3

that the Board's expert affidavits provided unrebutted reasons which supported finding that these matters implicated an issue of commercial competition. However, the court reserved ruling on the remaining six topics, and requested that the parties provide further briefing on those issues.[8]

On April 28, 2023, the circuit court entered summary judgment for the Board regarding the remaining topics.[9] As before, the issue was whether the remaining topics were exempt from the WVOGPA's open meetings requirement. Once again, the circuit court observed that the Gazette had not developed any discovery or other evidence to counter the Board's reasons for entering executive session. Ultimately, the circuit court concluded that the remaining topics were properly discussed in executive session.

In the April 28, 2023, summary judgment order, the circuit court discussed one topic—Title IX regulations—separately. On that point, the Board asserted attorney-client privilege as a basis for an exemption from disclosure. At the request of the Gazette,

---

[8] Specifically: (4) "a talk with [WVU's] athletic director about the 'outlook for this upcoming season'"; (5) the business college; (6) the emergency pay policy; (7) federal Title IX regulations; (8) tuition and fees; and (9) capital projects.

[9] Prior to entering its April 28, 2023, order, the circuit court conducted a hearing on the parties' cross-motions for summary judgment on March 28, 2022.

4

the Board submitted the materials allegedly covered by the attorney-client privilege[10] to the court for *in camera* review, which were accompanied by an affidavit from the Board's General Counsel, Stephanie Taylor. The affidavit described the legal advice she gave her client, the Board, regarding changes to federal Title IX regulations, and also described a memo she had prepared and submitted to the Board on August 7, 2020, for the same purpose. In its order, the court found the Board's discussion regarding changes to Title IX regulations exempt from public disclosure because it was protected by attorney-client privilege, pursuant to *Peters v. County Commission of Wood County*[11] and West Virginia Code § 6-9A-4(b)(12).[12]

As to the final five topics, similar to its prior ruling, the court concluded that these topics were related to WVU's pandemic response. As a result, the Board's discussion was exempt from disclosure because it implicated matters of commercial competition, pursuant to West Virginia Code § 6-9A-4(b)(9). However, unlike its prior ruling, the court

---

[10] The Board disclosed that, on June 19, 2020, and August 14, 2020, its counsel provided a briefing on Title IX issues, and a memorandum, drafted August 7, 2020, containing legal analysis and recommendations from counsel regarding Title IX compliance.

[11] *See* Syl. Pt. 5, *Peters v. Cnty. Comm'n of Wood Cnty.*, 205 W. Va. 481, 483, 519 S.E.2d 179, 181 (1999) (privileged communications between a public body and its attorney are exempt from the open meetings requirement of the WVOGPA).

[12] This provision permits entities subject to the WVOGPA to discuss confidential matters in executive session. W. Va. Code § 6-9A-4(b)(12) provides: "To discuss any matter which, by express provision of federal law or state statute or rule of court is rendered confidential, or which is not considered a public record within the meaning of the freedom of information act as set forth in article one, chapter twenty-nine-b of this code."

proceeded to consider whether discussion of these topics was separately exempt under West Virginia Code § 6-9A-4(b)(12). The court noted that these topics were presented to the Board for deliberation through internally prepared memoranda. The circuit court reasoned that, pursuant to subsection (b)(12), if the underlying document was exempt from disclosure under the West Virginia Freedom of Information Act ("WVFOIA"), discussion of that document may occur in executive session. Relying on West Virginia Code § 29B-1-4(a)(8) (2021) and *Daily Gazette Co. v. West Virginia Development Office*,[13] the circuit court concluded that the briefing memoranda constituted deliberative material, which exempted the memoranda from disclosure under WVFOIA. Therefore, the Board's discussion of that briefing in executive session was exempt from the WVOGPA's open meetings requirement pursuant to subsection (b)(12).

In its subsequent briefing on the remaining six topics, the Gazette raised a new issue:[14] the Board's meeting agenda failed to provide adequate notice to the public regarding the topics that would be discussed at the June 19, 2020, meeting.[15] The Gazette

---

[13] *Daily Gazette Co. v. W. Va. Dev. Off.*, 198 W. Va. 563, 482 S.E.2d 180 (1996).

[14] It appears that this issue was first raised in the Gazette's March 17, 2022, "Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment and Plaintiff's Cross Motion for Summary Judgment on the Six Remaining Topics."

[15] *See* W. Va. Code § 6-9A-3(d) (2013) ("Each governing body shall promulgate rules by which the date, time, place and agenda of all regularly scheduled meetings and the date, time, place and purpose of all special meetings are made available, in advance, to the public and news media."); *see also Capriotti v. Jefferson Cnty. Plan. Comm'n*, No. 13-1243, 2015 WL 869318, at *6 (W. Va. Feb. 26, 2015) (memorandum decision) (noting that

noted that the public would not have known that the remaining topics were discussed in executive session if it had not been for Board member Elmer Coppoolse's informal comments, made during the open portion of the June 19, 2020, meeting. On this point, the Board argued that the Gazette had waived this argument. In its April 28, 2023, order, the circuit court considered the issue preserved and found that the June 19, 2020, meeting agenda had failed to comply with the notice requirements of the WVOGPA. However, the court concluded that the defective notice was merely a "technical" violation and did not warrant an award of attorney's fees, as the Board had acted in good faith and its reasons for entering executive session were substantially justified.

The Gazette now appeals the April 28, 2023, order of the circuit court, granting the Board's summary judgment motion, fully resolving the case.

## II.    STANDARD OF REVIEW

We review a circuit court's grant of summary judgment *de novo*. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 190, 451 S.E.2d 755, 756 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*."). Similarly, with respect to questions of law or issues involving the interpretation of a statute, our review is *de novo*. *See* Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995) ("Where the issue

public meeting agenda notices must contain more than generic references to "adequately inform the public of the specific items to be considered.").

7

on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.").

## III. DISCUSSION

On appeal, the Gazette raises five assignments of error, which we consolidate and reorder accordingly.[16] The Gazette argues that: (1) the circuit court erred by employing an overbroad reading of the commercial competition exception within the WVOGPA; (2) the circuit court erred by considering WVFOIA exceptions as a basis for finding the Board's discussion of the disputed topics exempt from the open meetings requirement of the WVOGPA; (3) the circuit court failed to comply with Syllabus Point 6 of *Peters v. County Commission of Wood County*, 205 W. Va. 481, 483, 519 S.E.2d 179, 181 (1999) concerning the procedure required when a public body asserts the attorney-client privilege as the basis for holding an executive session; and (4) it was entitled to an award of attorney fees due to the Board's notice violations, pursuant to West Virginia Code § 6-9A-7(b) (1999).

---

[16] We have consolidated the five assignments of error into four discrete arguments. *See Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (consolidating assignments of error); *see also Harlow v. E. Elec., LLC*, 245 W. Va. 188, 195 n.25, 858 S.E.2d 445, 452 n.25 (2021) (reordering assignments of error to accord with the Court's analysis).

**A. The Open Governmental Proceedings Act**

The West Virginia Open Governmental Proceedings Act, codified at West Virginia Code § 6-9A-1 *et seq.*, makes it the public policy of West Virginia that meetings conducted by government entities should be open to the public.[17] "The fundamental purpose of the open meeting law is to ensure the right of the public to be fully informed regarding the conduct of governmental business." *McComas v. Bd. of Educ. of Fayette Cnty.*, 197 W. Va. 188, 197, 475 S.E.2d 280, 289 (1996) (quoting *State ex rel. Badke v. Village Board*, 494 N.W.2d 408, 414 (Wis. 1993)). Indeed, West Virginia Code § 6-9A-3(a) provides, in part, that "all meetings of any governing body shall be open to the public."[18] This policy of government transparency offers multiple benefits:

> Public access to information promotes attendance at meetings, improves planning of meetings, and encourages more thorough preparation and complete discussion of issues by participating officials. The government also benefits from openness because better preparation and public input allow government agencies to gauge public preferences accurately and thereby tailor their actions and policies more closely to public needs. Public confidence and understanding ease potential resistance to government programs. Accordingly, the benefits of openness

---

[17] West Virginia Code § 6-9A-1 (1999) provides, in part:

> The Legislature hereby finds and declares that public agencies in this state exist for the singular purpose of representing citizens of this state in governmental affairs, and it is, therefore, in the best interests of the people of this state for the proceedings of public agencies be conducted openly, with only a few clearly defined exceptions.

[18] The Board acknowledges that it constitutes a "governing body" subject to the WVOGPA. Likewise, the Board agrees that the meetings at issue are subject to the WVOGPA.

9

inure to both the public affected by governmental decisionmaking and the decision makers themselves.

W. Va. Code § 6-9A-1.

As to our role in effectuating this directive, "[c]ourt[s] should accord an expansive reading to the Act's provisions to achieve its far-reaching goals." *McComas v. Bd. of Educ. of Fayette Cnty.*, 197 W. Va. 188, 197, 475 S.E.2d 280, 289 (1996). However, as a matter of pragmatism, these goals are not without limitation:

> [I]t would be unrealistic, if not impossible, to carry on the business of government should every meeting, every contact and every discussion seeking advice and counsel in order to acquire the necessary information, data or intelligence needed by a governing body were required to be a public meeting. It is the intent of the Legislature to balance these interests in order to allow government to function and the public to participate in a meaningful manner in public agency decisionmaking.

W. Va. Code § 6-9A-1. In that same vein, a governing body may hold nonpublic meetings under certain, specific enumerated circumstances. *See* W. Va. Code § 6-9A-4 (enumerating twelve exceptions to the open meetings requirement). Further, privileged communications between a governing body and its counsel are exempt from the open meetings requirement. *See* Syl. Pt. 5, *Peters v. Cnty. Comm'n of Wood Cnty.*, 205 W. Va. 481, 483, 519 S.E.2d 179, 181 (1999); *see also* W. Va. Code § 6-9A-4(b)(12).

In balancing the tension between the objectives of transparency and efficient government, Justice Cleckley, writing for the Supreme Court of Appeals of West Virginia, adopted a pragmatic approach:

10

> In drawing the line between those conversations outside the requirements of the Open Governmental Proceedings Act, W.Va. Code, 6-9A-1, *et seq.*, and those meetings that are within it, a common sense approach is required; one that focuses on the question of whether allowing a governing body to exclude the public from a particular meeting would undermine the Act's fundamental purposes.

Syl. Pt. 4, *McComas v. Bd. of Educ. of Fayette Cnty.*, 197 W. Va. 188, 191, 475 S.E.2d 280, 283 (1996).

While we find no published West Virginia authority squarely addressing whether a governing body bears the burden in civil cases under the WVOGPA challenging a decision to go into executive session, we find our Supreme Court of Appeals' approach under WVFOIA instructive on this point. *See* Syl. Pt. 7, *Queen v. W. Va. Univ. Hosps., Inc.*, 179 W. Va. 95, 97, 365 S.E.2d 375, 377 (1987) ("The party claiming exemption from the general disclosure requirement under [WVFOIA] has the burden of showing the express applicability of such exemption to the material requested."). Similarly, we hold that the governing body asserting an exemption to open meetings requirements relying upon West Virginia Code § 6-9A-4 has the burden of showing the applicability of such exemption.

With these principles in mind, we proceed to consider the issues presented in this appeal.

11

**B. The Commercial Competition Exception**

At the outset of our discussion, we set forth the rules of statutory construction that guide our analysis. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). "In the interpretation of a statute, the legislative intention is the controlling factor; and the intention of the legislature is ascertained from the provisions of the statute by the application of sound and well established canons of construction." Syl. Pt. 2, *Meadows v. Wal-Mart Stores, Inc.*, 207 W. Va. 203, 206, 530 S.E.2d 676, 679 (1999). "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. Pt. 2, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968). "A cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute." Syl. Pt. 3, *Meadows v. Wal-Mart Stores, Inc.*, 207 W. Va. 203, 206, 530 S.E.2d 676, 679 (1999). "Generally the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for their general and proper use." *Id.* at Syl. Pt. 4.

We first consider the Gazette's argument regarding the circuit court's analysis of West Virginia Code § 6-9A-4(b)(9), the commercial competition exception to the WVOGPA's open meetings requirement. That section permits a government body, in closed session,

12

[t]o consider matters involving or affecting the purchase, sale or lease of property, advance construction planning, the investment of public funds **or other matters involving commercial competition**, which if made public, might adversely affect the financial or other interest of the state or any political subdivision: Provided, That information relied on during the course of deliberations on matters involving commercial competition are exempt from disclosure under the open meetings requirements of this article only until the commercial competition has been finalized and completed: Provided, however, That information not subject to release pursuant to the West Virginia freedom of information act does not become subject to disclosure as a result of executive session[.]

W. Va. Code § 6-9A-4(b)(9) (emphasis added). The Gazette asserts that the circuit court has impermissibly expanded the scope of the commercial competition exception. This argument is one of statutory interpretation, applying two canons of statutory construction, *ejusdem generis* and *noscitur a sociis.*

Under [*ejusdem generis*,] "where general words follow the enumeration of particular classes of persons or things, the general words, under the rule of construction known as *ejusdem generis*, will be construed as applicable only to persons or things of the same general nature or class as those enumerated[.]" And under [*noscitur a sociis*,], "the meaning of a general word is or may be known from the meaning of accompanying specific words."

*W. Va. Consol. Pub. Ret. Bd. v. Clark*, 245 W. Va. 510, 520, 859 S.E.2d 453, 463 (2021) (second alteration in original) (footnotes omitted) (first quoting Syl. Pt. 2, *Parkins v. Londeree*, 146 W. Va. 1051, 124 S.E.2d 471 (1962); and then quoting *Murray v. State Farm Fire & Cas. Co.*, 203 W. Va. 477, 485, 509 S.E.2d 1, 9 (1998)). The Gazette proposes

13

that, if read in context with the preceding language,[19] the commercial competition exception must be "restricted to matters involving public funds," and is inapplicable to the disputed topics.

We disagree. We conclude *ejusdem generis* and *noscitur a sociis* are inapplicable here. While the canons of construction can be helpful tools, they cannot override the intent of the Legislature, expressed in plain language:

> The rule of construction designated "ejusdem generis," limiting the scope or meaning of general words, such as "other" and "otherwise," used in connection with definite and specific enumerations, to things of the class or family of those named, has no application when the context manifests intention to give them a more extensive meaning and effect.

Syl., *Gauley Coal Land Co., v. Koontz*, 77 W. Va. 583, 87 S.E. 930 (1916); *see also* Syl. Pt. 2, *Parkins v. Londeree*, 146 W. Va. 1051, 1062, 124 S.E.2d 471, 477 (1962). Similarly,

---

[19] In its briefing before this Court, the Gazette argues:

> In applying these rules, the words "commercial competition" are preceded by "the investment of public funds or other matters involving" and followed by "which if made public, might adversely affect the financial or other interest of the state or any political subdivision." When read in this context, this "commercial competition" exception is not the broad blanket exception [the Board] and the trial court recognized, **but rather is restricted to matters involving public funds**, which if made public, might adversely affect the financial or other interest of the state or any political subdivision.

Pet'r's Br. 27 (emphasis added).

14

"'[t]he maxim *noscitur a sociis* is only a guide to legislative intent, though, and so, like any rule of construction, does not apply . . . to thwart legislative intent . . . .'" *W. Va. Consol. Pub. Ret. Bd. v. Clark*, 245 W. Va. 510, 520, 859 S.E.2d 453, 463 (2021) (quoting 2A SUTHERLAND STATUTORY CONSTRUCTION § 47:16 (7th ed.)).

An overly narrow reading overlooks the greater context of the provision. The text of the exception readily contemplates its application to "other matters" apart from the investment of public funds. W. Va. Code § 6-9A-4(b)(9) ("the investment of public funds **or other matters** involving commercial competition[.]") (emphasis added). Additionally, the provision also recognizes the need to offer protection even when non-financial interests are at stake: "which . . . might adversely affect the financial **or other interest** of the state[.]" *Id.* (emphasis added). With this language in mind, we conclude the context of subsection (b)(9) demonstrates it may apply to matters beyond the investment of public funds.

The Gazette also takes issue with the circuit court's adoption of the reasons offered by the Board, via expert affidavits, as its basis for finding that the disputed topics of discussion related to issues of commercial competition. However, the Gazette did not participate in discovery to develop support for its own case.[20] In comparison, the Board provided evidence to justify its assertion of subsection (b)(9). The meetings at issue took

---

[20] As the circuit court noted, "[the Gazette] has conducted no discovery in this case. It served no written discovery, deposed no fact witnesses . . . named no expert witness, nor has it deposed [the Board's] expert witnesses."

15

place in an extraordinary context—amidst a national public health emergency. The record reflects that significant uncertainty surrounded the University's ability to perform its core functions and contractual obligations. The Board entered executive session to deliberate these issues. The circuit court did not abuse its discretion in finding that, during this formative stage, premature disclosure risked undermining the University's response to and recovery from a national crisis.

The Board provided the necessary context to balance the public's right of access with the exigencies facing WVU, including the complexities of modern higher education administration and unique institutional challenges posed by the Covid-19 pandemic. Here, we recall Justice Cleckley's guidance: "In drawing the line[,] . . . a common sense approach is required; one that focuses on the question of whether allowing a governing body to exclude the public from a particular meeting would undermine the Act's fundamental purposes." Syl. Pt. 4, *McComas v. Bd. of Educ. of Fayette Cnty*., 197 W. Va. 188, 191, 475 S.E.2d 280, 283 (1996). Given the unique challenges arising from developing a Covid-19 response, we conclude that under these circumstances, the Board has met its burden to demonstrate the applicability of the commercial competition exception.

16

We note that the Gazette conceded in its brief that "there is no real dispute over the relevant facts."[21] Given the lack of disputed facts, in the face of the unrebutted evidence offered by the Board, we conclude that summary judgment is appropriate. *See Painter v. Peavy*, 192 W. Va. 189, 192–93, 451 S.E.2d 755, 758–59 (1994) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986)) ("[T]he party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence,' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor."). Accordingly, we conclude that the circuit court did not err in granting the Board summary judgment based upon the commercial competition exception to the WVOGPA, West Virginia Code § 6-9A-4(b)(9).

Finally, we recognize and appreciate the Gazette's underlying concern—that the "other matters" portion of the commercial competition exception could become an exception that swallows the rule. However, our reading does not jeopardize the overall purpose of the WVOGPA, as subsection (b)(9) is unique in that it only provides a temporary exception; once the matter of competition has been finalized, its protections fall away.[22] Even so, the Gazette's point is well taken. This exemption must be applied with

---

[21] As to any issues arising from legal opinions offered within the expert affidavits, the circuit court sustained the Gazette's objection on that point, deeming the expert affidavits inadmissible where they expressed opinions on whether the Board violated the WVOGPA.

[22] *See* W. Va. Code § 6-9A-4(b)(9) ("Provided, That information relied on during the course of deliberations on matters involving commercial competition are exempt from

17

care and restraint, and we caution lower courts to remain wary of governing bodies overclassifying matters as "other matters involving commercial competition." *See McComas v. Bd. of Educ. of Fayette Cnty.*, 197 W. Va. 188, 197, 475 S.E.2d 280, 289 (1996). We emphasize that our holding in this case on this point is a narrow one, founded in the extraordinary circumstances faced by the Board in the summer of 2020 in the context of initial briefings by the administration to whom the Board had previously delegated significant authority.

## C. The Freedom of Information Act & West Virginia Code § 6-9A-4(b)(12)

The Gazette next contends the circuit court erred in its application of a separate exception to the WVOGPA, West Virginia Code § 6-9A-4(b)(12), which permits a government body to enter executive session to take the following actions:

> To discuss any matter which, by express provision of federal law or state statute or rule of court is rendered confidential, or which is not considered a public record within the meaning of the freedom of information act as set forth in article one, chapter twenty-nine-b of this code.

*Id.* In short, subsection (b)(12) allows a public body to enter executive session to discuss certain confidential matters. Below, the Board proposed that a deliberative document, not subject to public disclosure under WVFOIA, may be discussed in executive session by a public body pursuant to subsection (b)(12). The circuit court agreed, granting the Board

---

disclosure under the open meetings requirements of this article only until the commercial competition has been finalized and completed[.]").

18

summary judgment as to five of the disputed topics on that basis.[23] The circuit court found that the topics were presented in an internal, deliberative memorandum, prepared by Vice President Alsop, and that as an internal memorandum, it was exempt from disclosure under WVFOIA.

The Gazette asserts that the text of subsection (b)(12) only contains a narrow reference to the WVFOIA, which for the purposes of the WVOGPA, only explicitly exempts matters not considered a "public record" as defined by WVFOIA. Further, the Gazette insists that adopting the circuit court's interpretation would erode the transparency principles of the WVOGPA.

The Gazette correctly notes that West Virginia Code § 6-9A-4(b)(12), exempts from disclosure "any matter which . . . is not considered a public record within the meaning of the freedom of information act."[24] The Gazette argues that, regardless of whether a document is exempt under WVFOIA, the document remains a public record.[25]

---

[23] As above, the circuit court's April 28, 2023, order granted summary judgment to the Board as to the following topics: (1) "a talk with [WVU's] athletic director about the 'outlook for this upcoming season'"; (2) the business college; (3) the emergency pay policy; (4) tuition and fees; and (5) capital projects.

[24] West Virginia Code § 29B-1-2(5) defines "public record" to "include[] any writing containing information prepared or received by a public body, the content or context of which, judged either by content or context, relates to the conduct of the public's business."

[25] In its brief, the Gazette argues: "Indeed, **all records exempt under the WVFOIA are 'public records,'** for the simple reason that anything outside the definition of a 'public record' is not even subject to the WVFOIA." Pet'r's Br. 23 (emphasis in original).

19

However, the Gazette overlooks the preceding portion of subsection (b)(12), which exempts "any matter which, by express provision of federal law or state statute or rule of court is rendered confidential."

Below, the circuit court's order addressed a single WVFOIA exception: the internal memoranda exception. *See* W. Va. Code § 29B-1-4(a)(8).[26] This exception "exempts from disclosure . . . written internal government communications consisting of advice, opinions and recommendations which reflect a public body's deliberative, decision-making process . . . ." *Daily Gazette Co. v. W. Va. Dev. Off.*, 198 W. Va. 563, 575, 482 S.E.2d 180, 192 (1996). We find *Highland Mining Co. v. West Virginia University School of Medicine* instructive; there, the Supreme Court of Appeals explained that, pursuant to WVFOIA, confidentiality extends to materials that fall within the internal memoranda exception:

> We hereby announce that West Virginia's Freedom of Information Act, West Virginia Code § 29B-1-4(a)(8) (2012), exempts from disclosure "internal memoranda or letters received or prepared by any public body" as defined by West Virginia Code § 29B-1-2(3) (2012). The FOIA reflects our Legislature's recognition that disclosure of public body communications reflecting deliberative processes on any subject could have a chilling effect on future communications. **Confidentiality** of certain documents connected with a public body's decision-making process ensures frank and open

---

[26] This exception is also known as the "deliberative process" exemption. *See Highland Min. Co. v. W. Va. Univ. Sch. of Med.*, 235 W. Va. 370, 381, 774 S.E.2d 36, 47 (2015) ("Through the development of case law, this FOIA exemption is commonly referred to as the 'deliberative process' exemption . . . .").

20

> discussion among its employees, which in turn enhances the
> quality of their decisions.

*Highland Min. Co. v. W. Va. Univ. Sch. of Med.*, 235 W. Va. 370, 385, 774 S.E.2d 36, 51

(2015) (emphasis added). Accordingly, we hold that where a document is exempt from

disclosure pursuant to the internal memoranda exception as defined by West Virginia Code

§ 29B-1-4(a)(8), a public body's direct discussion of such internal memoranda constitutes

a confidential, nonpublic matter for the purposes of West Virginia Code § 6-9A-4(b)(12).

Moreover, we decline to adopt a construction that will undermine the intent

of the Legislature. *See* Syl. Pt. 2, *Meadows v. Wal-Mart Stores, Inc.*, 207 W. Va. 203, 206,

530 S.E.2d 676, 679 (1999) ("In the interpretation of a statute, the legislative intention is

the controlling factor; and the intention of the legislature is ascertained from the provisions

of the statute by the application of sound and well established canons of construction.").

Like the WVOGPA, the WVFOIA, codified at West Virginia Code § 29B-

1-1 *et seq.*, is underpinned by similar notions promoting government transparency.[27] We

note that the primary objective of an open and efficient government is at the core of both

statutes, demonstrating that the two statutes should be read consistently with one another,

---

[27] *See AT & T Commc'ns of W. Va., Inc. v. Pub. Serv. Comm'n of W. Va.*, 188 W. Va. 250, 253, 423 S.E.2d 859, 862 (1992) ("The general policy of this act is to allow as many public records as possible to be available to the public."); *Highland Min. Co. v. W. Va. Univ. Sch. of Med.*, 235 W. Va. 370, 381, 774 S.E.2d 36, 47 (2015) ("This Court has made clear that the FOIA's exemptions are to be strictly construed, while the FOIA's disclosure provisions are to be liberally construed[.]").

rather than in conflict. We are required to reach this conclusion, as "[w]here it is possible to do so, it is the duty of the courts, in the construction of statutes, to harmonize and reconcile laws, and to adopt that construction of a statutory provision which harmonizes and reconciles it with other statutory provisions." *Charleston Gazette v. Smithers*, 232 W. Va. 449, 468, 752 S.E.2d 603, 622 (2013) (quoting *State v. Williams,* 196 W. Va. 639, 641, 474 S.E.2d 569, 571 (1996)). To do otherwise would create significant friction between the WVOGPA and the WVFOIA; applying such a reading, under WVFOIA, a pre-decisional document, drafted by a public body, would be deemed protected from disclosure by the internal memoranda exception; however, paradoxically, at the same time, if analyzed under the WVOGPA, *discussion of that same document* would be required to be conducted in open session.[28] We decline to do so.

Again, we appreciate the Gazette's sincere concerns regarding the scope of the WVOGPA's exceptions; however, the exception is only relevant in a very narrow context—where a public body meets to discuss a document that itself would be exempt from disclosure under the internal memoranda exemption in WVFOIA. This reading furthers the goal of both the WVFOIA and the WVOGPA and avoids inconsistent results.

---

[28] *See McComas v. Bd. of Educ. of Fayette Cnty.*, 197 W. Va. 188, 205, 475 S.E.2d 280, 297 (1996) ("Although when interpreting statutes we give credence to the normal usage of the word, we will not construe strictly language so as to produce ridiculous results.").

However, even so, we emphasize this exemption must be applied by governing bodies with care and restraint, and we caution lower courts to remain vigilant in independently evaluating reasons offered by governing bodies to enter into executive session to consider internal memoranda so as to avoid undermining the principles and scope of WVOGPA. *See McComas v. Bd. of Educ. of Fayette Cnty.*, 197 W. Va. 188, 197, 475 S.E.2d 280, 289 (1996).

Accordingly, we hold that the circuit court was correct in reading the WVOGPA's nonpublic matter exception, West Virginia Code § 6-9A-4(b)(12), consistently with WVFOIA's internal memoranda exception, West Virginia Code § 29B-1-4(a)(8).

We briefly address the factual sufficiency of the circuit court's grant of summary judgment based upon West Virginia Code § 29B-1-4(a)(8):

> [t]o invoke the "internal memoranda" exemption successfully, the public body must meet two prerequisites: in "the context in which the materials are used," the documents must be both predecisional and deliberative. *Virginia Beach,* 995 F.2d at 1253 (quoting *Wolfe v. Dep't of Health & Human Servs.,* 839 F.2d 768, 774 (D.C.Cir.1988)). Predecisional documents are "prepared in order to assist an agency decisionmaker in arriving at his decision." *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.,* 421 U.S. 168, 184, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975). Deliberative material "reflects the give-and-take of the consultative process," by revealing the manner in which the agency evaluates possible alternative policies or outcomes. *Virginia Beach,* 995 F.2d at 1253 (citing *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C.

23

Cir. 1980)).

*Highland Min. Co. v. W. Va. Univ. Sch. of Med.*, 235 W. Va. 370, 383, 774 S.E.2d 36, 49 (2015). Below, the circuit court found the document and subsequent discussion in executive session to be pre-decisional and deliberative, exempting it from disclosure pursuant to West Virginia Code § 6-9A-4(b)(12) and West Virginia Code § 29B-1-4(a)(8). Further, it is undisputed that no votes, decisions, determinations, or official actions were made while the Board was in executive session. As mentioned above, the Gazette did not develop discovery to dispute or scrutinize the Board's experts. Accordingly, based on the record before us, we conclude the Board carried its burden to establish the applicability of the internal memoranda exemption.

### D. Attorney-Client Privilege

The Gazette next addresses the final topic considered pursuant to West Virginia Code § 6-9A-4(b)(12), the Board's assertion of attorney-client privilege.[29] The Gazette asserts that the Board's affidavits were insufficient to comply with the procedure laid out in Syllabus Point 6 of *Peters v. County Commission of Wood County*, 205 W. Va. 481, 483, 519 S.E.2d 179, 181 (1999), which requires a public body asserting attorney-

---

[29] *See* Syl. Pt. 6, *State ex rel. United Hosp. Ctr., Inc. v. Bedell*, 199 W. Va. 316, 320, 484 S.E.2d 199, 203 (1997) (quoting Syl. Pt. 2, *State v. Burton*, 163 W. Va. 40, 254 S.E.2d 129 (1979)) ("In order to assert an attorney-client privilege, three main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from that attorney in his capacity as a legal advisor; (3) the communication between the attorney and client must be [intended] to be confidential.").

client privilege to submit the communications at issue to the circuit court for *in camera* review.

Syllabus Point 6 of *Peters v. County Commission of Wood County*, 205 W. Va. 481, 483, 519 S.E.2d 179, 181 (1999) explains:

> When a public body closes an open meeting on the basis that the matters to be discussed in that meeting are exempt from the Act as a result of the attorney-client privilege and that claim is challenged, the circuit court should review *in camera* whether the communications do indeed fall within that privilege. In other words, a bare claim that the matters to be discussed in a meeting of a public body are privileged, if challenged, does not suffice to close the meeting.

We disagree. In its March 17, 2022, cross motion for summary judgment, the Gazette requested that the Board submit a summary of the privileged communications, discussed in executive session, for *in camera* review. On April 22, 2022, the Board did so, submitting, by affidavit, the testimony of the Board's General Counsel, Stephanie Taylor, to the circuit court, summarizing her communications to the Board.[30] On appeal, the Gazette argues only in-person testimony properly satisfies the *Peters* requirement; however, we see no such requirement. Pursuant to the *West Virginia Rules of Civil Procedure*, for the purposes of a motion for summary judgment, sworn affidavits are acceptable as testimonial evidence, within the discretion of the trial court. Rule 43, titled

---

[30] As noted previously, the Board submitted a redacted version of Ms. Taylor's affidavit for the Gazette, and an unredacted version for *in camera* review.

"Taking of testimony," provides that: "(e) Evidence on motions. – When a motion is based on facts not appearing of record *the court may hear the matter on affidavits presented by the respective parties*, but the court may direct that the matter be heard wholly or partly on oral testimony or deposition." Further, Rule 56(e)[31] provides, in part: "(e) Form of affidavits; further testimony; defense required . . . affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." The Gazette fails to cite authority indicating that, under *Peters*, affidavits are insufficient to establish a factual basis for the assertion of the attorney-client privilege. Accordingly, we conclude the circuit court did not err in its *in camera* review of privileged materials.

---

[31] The complete version of Rule 56(e) provides:

> (e) Form of affidavits; further testimony; defense required. - Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

26

As to the substance of the Board's assertion of attorney-client privilege, the circuit court considered the unredacted affidavit of Ms. Taylor and concluded her discussion of Title IX regulations in executive session constituted privileged attorney-client communications.[32] Given that the Gazette does not dispute the underlying facts, we see no reason to set aside the circuit court's ruling on this issue.

**E. Notice & Attorney Fees**

The Gazette's final argument raises two issues: first, the circuit court committed an error of law when it characterized the Board's violation of the WVOGPA's notice requirements as merely "technical," and second, it should have been awarded attorney fees for establishing that violation.

The WVOGPA requires that: "[e]ach governing body shall promulgate rules by which the date, time, place and agenda of all regularly scheduled meetings and the date, time, place and purpose of all special meetings are made available, in advance, to the public

---

[32] In its April 28, 2023, summary judgment order, the circuit court explained:

> This Court finds that the information provided by Defendant's General Counsel to her client, the Board, was covered by the attorney-client privilege. Ms. Taylor was acting in her role as General Counsel when she briefed the Board on the need to change the Board of Governors Rules to comply with Title IX. Additionally, both the lawyer and client intended the communication remain confidential, as evidenced by the fact the Board went into executive session to receive Ms. Taylor's advice on June 19, 2020.

and news media." W. Va. Code § 6-9A-3(d). Further, a governing body who has violated

the WVOGPA "may be liable to a prevailing party for fees and other expenses incurred by

that party . . . unless the court finds that the position of the public agency was substantially

justified or that special circumstances make an award of fees and other expenses unjust."

W. Va. Code § 6-9A-7(b).

> In its April 28, 2023, order, the circuit court concluded:
>
> [The Board] violated the WVOGPA by publishing an inadequate Meeting Agenda prior to the June 19, 2020, meeting. Specifically, the . . . items were generic descriptions insufficient to provide enough information to adequate place the public . . . on notice of the particular items [to be discussed]. [However,] while the notice was insufficient, the [Board] demonstrated that it believed it had adequately identified the issues to be discussed in executive session and was able to correlate each of Mr. Coppoolse's comments into a general agenda item. Therefore, the Court finds that violation of the WVOPGA was "technical" and does not warrant the award of attorney's fees.
>
> . . .
>
> The Court FINDS that in all respects, the Board acted in good faith in complying with its statutory obligations under the WVOGPA and its interpretation of the WVOGPA is substantially justified.

We do not endorse the circuit court's characterization of a defective notice

as merely "technical." Our position is clear: "[t]he fundamental purpose of the open

meeting law is to ensure the right of the public to be fully informed regarding the conduct

of governmental business." *McComas v. Bd. of Educ. of Fayette Cnty.*, 197 W. Va. 188,

197, 475 S.E.2d 280, 289 (1996) (quoting *State ex rel. Badke v. Village Board*, 494 N.W.2d 408, 414 (Wis. 1993)). Governing bodies must endeavor to strictly abide by the technical requirements of WVOGPA, including notice. Even so, we do not find reversible error in the court's application of the law or its refusal to award attorney fees in the overall context of the litigation below. We find *Capriotti v. Jefferson County Planning Commission* instructive here:

> Although we have found two violations of the Act, the violations do not necessarily require that the actions taken at the July 26, 2011, meeting be invalidated. The remedies provided in W. Va. Code §§ 6-9A-3, 6-9A-6 (1999) and 6-9A-7 (1999) are left to the discretion of the circuit court. Moreover, as we explained in *McComas v. Board of Education of Fayette County,* 197 W.Va. 188, 475 S.E.2d 280 (1996), "[a] finding that a violation [of the Open Governmental Proceedings Act] occurred . . . does not necessarily require invalidation of all actions taken during or following from the wrongfully held . . . meeting."

*Capriotti v. Jefferson Cnty. Plan. Comm'n*, No. 13-1243, 2015 WL 869318, at *8 (W. Va. Feb. 26, 2015) (memorandum decision). We reach a similar conclusion. The circuit court found that, despite its violation, the Board was substantially justified in its actions, and that accordingly, an award of attorney fees was unnecessary. Ultimately, we find no error of law or abuse of discretion in the circuit court's ruling on these issues.

## IV.   CONCLUSION

For the above stated reasons, we affirm the circuit court's April 28, 2023, order.

Affirmed.

29